The court now calls case number 119704 Moline School District No. 40 Board of Education v. the Hon. Pat Quinn, et al. Are you ready to proceed? Yes, Your Honor. Are we ready? Let me proceed. Please be seated. Thank you, Your Honor. Good morning. Good morning. I'm Lisa Court, counsel. To answer your question, Your Honor, no, I was a boy scout for two years. I was a small child and we had not enough time for everybody, parents, the volunteers to do the scouting. The theme is developing here. Your Honor, this case revolves around an act that was passed with overwhelming... Would you introduce yourself, please? Oh, I'm sorry, Your Honor. My name is Jason O'Rourke. I represent Elliott Aviation. Thank you. Your Honor, this case revolves around an act that was passed with overwhelming bipartisan support in order to give a long-standing Illinois family business an incentive to expand its operations in Moline, Illinois and bring millions of dollars of revenue and dozens of jobs into this state instead of expanding its operations and taking the money and the jobs to Iowa. This court has repeatedly held that statutes such as this, those involving revenue, are presumptively constitutional. The circuit court followed this court's precedent and held the district court had not met its very high burden to demonstrate that this act was unconstitutional. The third district overlooked the district's lack of evidence and addressed only one constitutional argument holding that the act violated the special legislation provision. We believe the third district should be overruled and the circuit court's decision should be affirmed. There are essentially three constitutional arguments that the district has asserted as a challenge. The Special Legislation Clause, Article 9, Section 6, and the Uniformity Clause. I will address each in turn. The Special Legislation Clause this court has held has the purpose of preventing the legislature from arbitrarily discriminating in favor of one person or group to the exclusion of others who are similarly situated. Thus, the district was required to prove at the circuit court level two things. That the act confers a special benefit upon an FBO, a fixed base operator, in Rock Island and excluded other FBOs that were similarly situated. And then two, if they can clear that hurdle, the district was required to demonstrate that the act's classification was arbitrary. The circuit court noted... I hate to stop you in midstream here. The appellate court here only decided the special legislation issue, right? Yes, Your Honor. Okay, so, and that's where they stop? Correct. All right, so we're in the position then of obviously if we agree with the appellate court, that's it. And then if not, we can either address those or send it back for those two arguments, is that right? Yes, Your Honor. Okay, thank you. And we have addressed in our brief and cited the cases that provide that this court certainly can address the subsequent arguments because I think all parties would agree they have been fully briefed at the circuit court level and at the third district level. So, from our standpoint, Your Honor, we would encourage the court to address all three issues in affirming the circuit court's decision. The circuit court held in this case that there was no evidence presented by the district in its challenge to demonstrate that Elliott was similarly situated with any other FBO. And that's important in this case because this court has repeatedly held that there must be evidence that the parties that are allegedly impacted are similarly situated. There is simply no evidence in the record below, and this was decided on cross motions for summary judgment. Everybody had the opportunity to present affidavits, exhibits, et cetera. There was no evidence in the record below that any other entities were similarly situated. Elliott is a fixed base operator who does business in multiple states. There's no evidence that there were any other fixed base operators in the state of Illinois that do business in multiple states. In fact, there was no evidence whatsoever identifying any other fixed base operators in the state of Illinois. All there was in the district's filings was a reference and an argument that there are a number of other airports in this state. That doesn't clear the hurdle because there's a difference between an airport and a fixed base operator. Additionally, what the legislature was confronting when they passed this act, they had an extensive study from the Quad City Chamber of Commerce. That study showed that Elliott had a need and an opportunity to expand its business. As I said earlier, the study showed dozens of new high-paying professional jobs as well as $84 million of revenue to the state of Illinois over approximately a 10-year period. That's significant because there was no evidence any other FBO in the state was trying to decide, do I bring these jobs and this revenue into my state, my home state, or do I take them somewhere else? Do I take them to Iowa? Do we look at what Elliott is actually doing or do we look at the legislation, which makes no reference to the fact that it would create money or jobs or that they do business across state lines? If you look at the act, it seems just to say whether it's Elliott or whether it's another FBO that does business out of Moline Airport, they're going to be tax-exempt. At this point, Elliott is the only FBO in Rock Island County at the airport. But it would allow any other FBO to come in, whether they did business across state lines or not. The act as written at this point does that, Your Honor. Now, what's important to consider is the legislative history and the fact that Representative Verschoor and Senator Jacobs and the others who spoke to this issue during the floor debates specifically relied upon the Quad City Chamber's study in sponsoring and ultimately passing this act overwhelmingly. They discussed the great impact this would have on Rock Island County, on the state of Illinois. So they did, in fact, rely upon what this benefit would bring to the state. A very important economic benefit at a time where, frankly, we need it. As a Rock Island County resident, I like to see this sort of expansion. And I think that's a good justification. So there's no evidence in the record whatsoever that any other FBO across the state was considering expanding, was considering whether to do so in a state that taxes the FBO leasehold or a state that doesn't. And that's a significant difference here because a business has to look at that. In Illinois, prior to the act being passed, a leasehold interest was taxed. In Iowa, where Elliott also does business, it was not. It's a significant financial impact to a company in deciding, am I going to expand in Illinois, where, by the way, Elliott has done business for several years, longer than I've been alive, or are we going to take the business to another state? Those are considerations that the circuit court looked at and determined there is no evidence whatsoever that any other FBO in the state was similarly situated. We've seen no evidence in any of the briefs to address that, either at the summary judgment stage, either at the appellate stage, or at this stage. So that right there ends the analysis. If there's no evidence, and the burden's clearly on the district to provide that evidence, there's no evidence that the Elliott is similarly situated to other FBOs. The special legislation challenge fails as a matter of law. The third district also addressed, in its opinion, it went beyond FBOs and addressed other businesses in the state. The difficulty and the problem with that approach from the third district was there's no evidence that any other businesses are similarly situated. Elliott's in a unique position because it provides what we'll talk about later as quasi-public utility services at the airport. Basically what it does is it provides the services to private airlines that the commercial airlines have on their own. Absent an FBO at an airport, there's no one to do fueling services for private aircrafts. There's no one to provide hangers for private aircrafts, flight plans, places for pilots to rest, et cetera. That's what an FBO does. So that business is not similarly situated to these other unidentified businesses that the third district referred to in its opinion. If Elliott went out of business in the other states or simply went out of business, another FBO comes in and just does business in Rock Island County. They're tax exempt, is that right? Under the statute as written, yes, Your Honor. I think there was some history of the legislation that at one point tried to include a Lansing airport. So if that same company did business in Rock Island, they'd be tax exempt, but if they did business in Lansing, they'd be subject to taxes. At this point, the way the act is written, that's correct, Your Honor. Thank you. And I believe as the circuit court addressed, there's a rational basis to consider that as well. The Moline Airport is in a unique position compared to many airports. As the circuit court pointed out, it's about 10 minutes from the Davenport Municipal Airport. Quad Cities is a tight, close community, easy to get from one airport to the other, easy for commuters or, excuse me, airlines, private airlines, and people that use private planes to make the decision to either be in Illinois or be in Iowa.  Now, we had no burden to prove that Elliott was uniquely situated. The burden, and it's a heavy burden this court has recognized, was clearly on the district to prove that it was similarly situated. We did prove that it was uniquely situated, as the circuit court recognized, for all the reasons I've just discussed. So because of this, this court has held previously many times that laws can be enacted to address a uniquely situated individual or business. That's what we have here. The special legislation clause is not implicated. Even if it was, even if you determined that there was evidence that Elliott was similarly situated with others, that doesn't end the analysis. You then get to the rational basis analysis that this court has recognized is clearly the most deferential, lowest hurdle in the constitutional analysis. The circuit court recognized, and we believe this court has in prior decisions, that economic development, economic growth is a rational basis. That's what we have here, as I've discussed. Millions of dollars of revenue, dozens of new, high-paying, good jobs in the state of Illinois, in Rock Island County, as opposed to Iowa. For those reasons, Your Honors, as well as those we've set forth in the brief, we believe the Act clearly survives constitutional scrutiny under the special legislation clause. We've also addressed the two other arguments that the district has made, arguing that the Act is unconstitutional. First, Article 9, Section 6, the constitutional limit on exemptions. What's important to consider in that regard is this leasehold interest only became taxable because the legislature decided it would be many years ago. The property is owned by the government, by the Metropolitan Airport Authority, a governmental entity. That property is not taxable. The leasehold interest only became taxable because the legislature enacted Section 9-195 or its predecessors. Essentially, what the district's argument is, once they determined that the property was taxable, the legislature could never, ever change its mind. I don't believe under this court's precedent that's correct. Under this court's precedent, it's a black-letter law that real estate taxes are permitted only against the owner. 9-195 changed that. And this court has affirmed that statute in other regards. If, in fact, you can make a leasehold interest taxable, then certainly the legislature has the power to make it not taxable. The legislature today can't be bound by what happened 10, 20, 50 years ago. Times change. Circumstances change. Situations change. And that's what the legislature was doing here. It was using its best judgment and its discretion to address changes and the need to bring these jobs and this revenue into the state of Illinois. The second reason under Article 9, Section 6 to affirm is what I alerted to earlier. It's important to consider what an FBO does, as I said. The affidavit from Elliott's president, the affidavit from the airport's director of aviation, Bruce Carter, explains all of this in detail. An FBO provides services that are an essential part of the airport, provides services that, without these services, an airport couldn't function. You can't get by on just having United or American flying in. In the Quad Cities, for example, we know John Deere has airplanes. This was in the record. Private airplanes come in for the John Deere Classic. They bring a lot of big-name golfers, television equipment, news media, the whole works. That's what an FBO services. Without an FBO, there's no one to provide those services. And it's because of that that they're referred to as a quasi-public utility. We discussed this court's decision in the Illinois State tollway case, toll highway case, and the fact that there, leasing a restaurant or a gas station was considered a quasi-public utility, and, therefore, the leasehold interest would not be subject to taxation. Well, if you have a situation where at an oasis a leasehold interest in a gas station or a McDonald's cannot be subject to taxation, if the legislature so decides, then this is even more important. When you're driving down Interstate 88 or Interstate 80 or Interstate 55, there's plenty of gas stations you can stop at without stopping at the oasis. It's a little different when you're flying an airplane. You can't simply land an airplane at the oasis or a gas station or on a highway. You need to go to an airport that has an FBO. That's why, as we've discussed, under the quasi-public utility theory that was legislature also has the power to decide this leasehold interest is not taxable. Finally, Your Honors, with respect to the uniformity clause argument, basically this court has told us that the uniformity clause provides that taxing officials may not value the same kind of property within the same taxing boundary at different proportions of their value. But that doesn't limit the legislature's power to classify property. That's the Bosworth decision. And the classification, according to this court in the Eastlake decision, is presumptively valid. It must be upheld if there's any set of facts that can reasonably be considered to sustain it. The circuit court recognized properly, I think under this court's precedent, that the taxing statute in this case must only be uniform on the class on which it operates. The district seems to argue that all of the FBOs in the different counties across the entire state must be treated the same. I don't believe that's accurate under this court's precedent. In the same way that Rock Island County, Sangamon County, Mercer, LaSalle, any of them can have different real estate tax rates for their real estate within their boundaries, so can FBOs. At the summary judgment stage, the district recognized that the taxing body at issue was the district. So what we have here is with Section 9-195, all of the FBOs within that taxing body are, in fact, being treated the same. There's no difference. Any FBO that exists in Rock Island at this point, there's only one, but any FBO that exists in Rock Island under the statute is being taxed at the same rate, or in this case, not being taxed. It was clearly within the legislature's discretion to make that decision. And again, this is subject only to the rational basis test, the economic impact, the economic benefits that this act provides, the incentive this act provides to a longstanding Illinois business survives that test and survives constitutional scrutiny. If you have questions, I'd be happy to address them. Otherwise, we would ask that you affirm the circuit court and reverse the third district's decision. Thank you, Counselor. Thank you. Thank you. May it please the Court. Counsel. Floyd Perkins, Counsel. At my table, Patrick Hanlon, Dan Churchill, and Mark Churchill, Co-Counsel. This case really focuses on the special legislation provision. The appellate court didn't deal with the other two, and I believe if the court could send it back to the appellate court to talk about that. The trial court did deal with all three constitutional issues. So we do have a decision at the trial court level, but the appellate court struck it down under special legislation. So to answer Your Honor's question, this court could dispose of it. We briefed it. We certainly would agree with that. But it could go back to the appellate court to deal with the other two if this court were to reverse the appellate court's decision. Of course, I urge the court to affirm. And I want to address what Counsel listed out here as the points that he thought should be argued here. He said this is about revenue. Well, when you heard it, it's about Elliott's revenue. Now, I don't disagree that bringing jobs to Illinois is something that every Illinoisan cares about, our legislature cares about. It's the important question across the whole country. But we're talking here about our Illinois Constitution and the provisions there and about whether a special law that gives special benefits to one group and not to others similarly situated, whether that can stand. And quite frankly, the facts are here that it can't. Elliott likes to tell you about itself. It's telling us, and it put into the record, that it says it will expand. It will do things it says. Well, it might, but the law doesn't require them to do so. The law that got passed said if you're here, if you're in Rock Island, you get the exemption if you're an FBO there. Other FBOs could come to Rock Island with no plan to go to expand or jobs and just plop down in Rock Island and get the exemption. So when Elliott starts to tell everybody about what this law does, they fail to explain that the class isn't just Elliott that got this benefit. And it isn't, Elliott's not even bound by what it claims it will do. And it's promising to do things in the future. So when it says there are facts in the record about that, it said here's what we propose. Speaking of facts in the record, are there facts in the record about other entities that are similarly situated? Your Honor, we had a verified complaint. In our complaint we listed that there are 20 of these municipal airports across the state. We listed them out. As counsel explained, you can't really run an airport without FBOs. They provide the gas and the repairs. And so there's in our complaint alleges that there are FBOs in airports across the state. And so there are other FBOs and an airport has to have an FBO. And quite frankly, even if there wasn't, airports can have FBOs in the future. So all airports are going to have the opportunity in the future to have an FBO or Rock Island could have others. So there's no unique nature about what Elliot said. Elliot happens to be an FBO at this particular airport. The facts, when you look at the statute, it just says if you're an FBO at this airport, you get this unusual exemption to a for-profit business. And that is something that when I address the other part of the Constitution, I think is quite unique. But with regard to special legislation, the issue is, is it a matter of a classification that's rational for the purposes of the statute that's involved here? The classification of this set of FBOs at one place as opposed to others, if this is a good law, if there is some benefit for FBOs getting this exemption, why wouldn't it be available to FBOs at other airports? Why, if it's a matter of lowering taxes to bring jobs, why wouldn't the general law provide that kind of benefit to all employers on the border? That's the debate that's going on across the whole state. But picking out somebody who says, if you give me this tax benefit, I'll expand, you know, that's an interesting proposition, but that should be opened up to others who might be in that same spot, not to just Elliott and others who happen to want to go to this one place in Illinois. Why in Illinois would that be, those employers or that particular spot, be any different than the rest of the borders of Illinois? And that's what this law is about. It's picking out somebody who was able to get the ear of their legislators. When you look at the debate, Lansing was going to be included, and then it was not. So there's certainly an opportunity for others to be FBOs, and others who, if they got an exemption, would put these jobs in place. In the Peoria, the Board of Ed Peoria case, this court recently, one of the most recent cases on special legislation out of this court, said that if the law there provided a change to whether the police security forces there, if they had a dispute, would go to one board, and the law changed it to another board. But it said that it would only apply to an existing police force at a school at a point in time. And this court made a great point and was clear that what would happen is, maybe in the future another school board would come along and have a police force, and this good law, this law that changed where that board would go to, where the police issue would go to, wouldn't be available to the new school board and its police force. And this court said, because it's so restrictive, because it doesn't allow somebody in the future who's going to come along and be in the same spot, that that law should be struck down. That's what happened in the Peoria case. So looking at that case, we have a situation where another FBO could come right to Rock Island, not do this expansion, not do anything, but get the tax break. And or there are other FBOs across the state who might be exactly like Elliot in the future, wanting to compete. FBOs and airports, they're really in a kind of a regional, at least a regional competition. There's no real thing about a particular state boundary that limits the competition of an airport or an FBO. So somebody a couple hundred miles away, 50 miles away across the border, is going to be in competition with any Illinois airport or any Illinois FBO. So when we talk about the rational basis test here, it's whether the classification is rational, whether the classification to pick out only this one place in this one set of FBOs. And of course, these FBOs are leasehold interests. So the property belongs to the airport authority. The fee is exempt. But it's the leasehold. And right at the moment, and as the facts in this case show, Elliot before this law was paying $150,000-plus to our school board. As other FBOs, as leaseholds, were paying to their local governments. This law said carve that out for this one particular Rock Island FBO issue, the Rock Island Municipal Airport's FBOs, where others are required to still pay the taxes to their municipal governments. The other two constitutional arguments are Article 9, Section 6, which is the limitation on giving exemptions in the Constitution on real estate taxes. That provision provides that certain persons in certain enumerated uses can receive exemptions. The case law is pretty clear. The legislature can't expand that. This court's dealt with that in a number of cases, even the cemetery case. Makes it very clear that when the legislature tries to even define charity in a different way, that it has to abide by what this court decides those uses are and what those persons are. So the law is pretty locked down that for-profit businesses aren't able to get real estate tax exemptions for themselves. And the issue in this situation is strictly, are these lessee leasehold interests real estate? It's been that way under the 1870 Constitution, statutes that were enacted under that. And through the 1970 Constitution, the same statutes have applied. And so in the property tax code, leasehold interests are defined as real estate. The case law has held leasehold interests to be subject to real estate taxes. When it's owned by a government, the fee is owned by a government, but it leases. Sometimes those leases are given their own PIN number and their tax. And that's generally the situation. There is a section in the code that cuts out certain provisions if the government leases it to a charity or to another government, those are exempt, meaning the lessee's interests. But otherwise, the lessee, if they lease from a government, generally pays tax on an assessed basis, real estate taxes for the leasehold interest. So the leaseholds have been considered real estate in Illinois law for 100 years. So at this point, what happened here is one set of parcels in this Rock Island County were segregated out by the statute and said for-profit businesses there are entitled to exemption. It's contrary to that provision in the Constitution. And so we've set forth a number of cases. When they talked about the Toll Highway case, that case didn't discuss the constitutional limitations. It talked about what the statutory provisions were with regard to those oases. So when you read that case, it never got into the constitutional limitations. I don't know why, but it didn't address that. And so we're in a situation where Article 9, Section 6, I believe, applies to lessee leasehold interests. And if it does, for-profit entities just aren't in the enumerated persons or the enumerated uses under that part of the Constitution. And the third argument we raise is with regard to uniformity, which is Article 9, Section 4A, uniformity of real estate taxation. And counsel's somewhat right. I think classification is generally by area. And so the limitations on what classifications can be done in a particular area have to look at that. But could it be refined down to picking out FBO lessees as opposed to all lessees of government? I think that the classification here, if there's some benefit in Rock Island to giving certain people tax exemptions, wouldn't it be required that the uniformity provision in the Constitution require that all lessees of government in that area, if there's some reason for them not to pay taxes, that it be extended to them? And so that part really is perplexing in terms of how that could be uniform. And in addition, why would FBOs in one part of the state be able to get this exemption if there's a uniformity requirement on real estate taxation? I mean, I know a lot of the cases talk about that regionally, but it really seems that in legislature picking out and giving just a little set of parcels somewhere that are not unique in that regard. There's lots of entities that lease from government and are paying taxes. Why would these particular lessees be given a zero assessment, basically, an exemption? And so we believe that it really does show that if there is, if it doesn't violate the real estate limitation on exemption, then this is a violation of the uniformity clause. I still think the best argument, I think it certainly violates the special legislation. I think it also does violate the exemption provision. Thank you. Thank you, Counsel. Mr. O'Rourke. Thank you, Your Honor. What counsels just asked you to do is exactly what they asked the circuit court to do and the third district to do, and that is substitute your judgment for that of the legislature. But this court has held that's not the court's role. They've asked you to consider the fact that, well, it's speculative whether or not Elliott will actually expand. This court has specifically held that the legislature's decisions are not subject to courtroom fact-finding. Instead, the legislature is given a wide latitude, a wide amount of deference to make their judgments. And, in fact, this court's language says to speculate. The legislature can do that. Here there's a little more to it than just speculating. This is not something that happened on a whim. Again, the Quad City Chamber of Commerce presented a multi-page detailed analysis to the legislature. Representatives Verschoor, Senator Jacobs, and a number of others discussed that on the House floor. Obviously, that analyzed at first when you read the legislative history that's cited and believed this was a good judgment business decision for the state of Illinois. This court has repeatedly given deference to those decisions, and with all due respect, it should do so here. Now, Your Honor. Would other FBOs have the same? It isn't even a requirement for Elliott, is it, to expand?  Could the act have been written in a more general way and still give Elliott the benefit that these representatives wanted to give it? That is, all FBOs located within 20 miles of the state line that provide services in more than one state? There are a number of ways the legislature could have done it, Your Honor. They chose to do it this way, and if we're in the realm of speculating, as the district asks us to do as to what other FBOs are out there, they talked about Lansing, for example, Lansing being taken out. Did the legislatures look at this and decide, we are going to limit this tax hit, tax impact, to the county that's going to benefit most? So, in other words, do they look at it and say, you know, we don't really want to hit Winnebago up in Rockford because we have no idea if, in fact, their FBO has any plans or any opportunity to expand. We don't want to hit the Cook County Airport or any others in the state when there's no indication or no representation that their FBO is in the process of making a decision of whether to expand there or in another state. Did the legislature decide, we're going to limit this to the county that ultimately stands to benefit the most? We don't know that from the legislative history, but again, they're entitled to that deference and that level of judgment. The burden was on the district to rule out every possible conceivable rational set of facts and every possible rational basis. That's what they haven't done. There are a lot of reasons to limit it to Rock Island County, including the proposed expansion and the incentive to do so. Your Honor asked the very pointed question, what evidence is there in the record that other FBOs are similarly situated? And the response you got was, well, there's other airports that have FBOs. Well, there's a big difference. There are a lot of businesses in the state of Illinois that are not similarly situated to each other. In this case, the key point is the act was designed to give an incentive to a business that had the immediate need to expand and bring dozens of jobs and millions of dollars of revenue into this state instead of taking it to Iowa. There's no evidence that any other FBO in the state of Illinois has a location in another state. They haven't given you any evidence to demonstrate that. There's no evidence that any other FBO is considering expanding anywhere, let alone trying to decide whether to do it here or in another state. That's the evidence they could have tried to bring forward if it's out there. We don't know if it's out there. But at the summary judgment stage, it was clearly their burden, and this Court has said a very heavy burden, to overcome the presumption of constitutionality, especially in revenue cases. Excuse me. Counsel said with respect to the Article 9, Section 6 argument that the law is locked down, private businesses don't get real estate tax breaks. Well, I disagree. The Illinois State Toll Highway case we discussed had that very situation. The operator of a gas service station at the Oasis was exempted from paying taxes on its leasehold interest. That's the same thing. That's exactly what we have here, a private business being exempted from paying leasehold interest. Again, quasi-public utility, as that service station was, but to a higher degree and to a broader, more important extent for airlines. Mr. O'Rourke, the appellate court found that the act as written was special legislation. Isn't that right? Yes, that's what the court found. And so could the legislature constitutionally then give Elliott Aviation an exemption from property taxes, perhaps for a period of time on a contingency basis, whether Elliott, using the tax savings to expand in Illinois, whether they actually would go ahead with it? There are any number of things the legislature could have done, Your Honor. We agree with that. They exercised their judgment to do it as they did. The other thing is this is not set in stone or locked in for any number of years. If it turns out that Elliott doesn't expand in Moline, doesn't expand in Rock Island County, I'm not aware of anything that would stop the legislature from revisiting this issue. But Elliott right now has no time frame in which they have to expand. Not under the law. As a practical matter for business reasons, that's a separate issue. So they could have this exemption for a long period of time? The way it's written, yes, they could. And that's the judgment and the decision the legislature made based on all of the evidence that it was presented. And I think it's fair to say that we would have not had an overwhelming, I mean, this was 2-3-1 vote. I mean, this was overwhelming. This wasn't a 51-49%. It was an overwhelmingly passed bipartisan decision. I don't think the legislature would have done this if they didn't honestly believe that this was going to happen. They're not going to let a company walk away from a significant amount of taxes if they're not convinced that it's going to do something for Rock Island County and the state of Illinois. Again, we respectfully request that you affirm the circuit court and reverse the third district. Thank you. Thank you. Case number 119704, Moline School District number 40, Board of Education versus the Honorable Pat Quinn et al. will be taken under advisement as agenda number nine. Mr. O'Rourke and Mr. Perkins, thank you for your arguments this morning. You are excused at this time.